Nautilus Group v. Icon Health Mr. Tarantino Thank you, Your Honor. Nautilus is here appealing the summary judgment of non-infringement of Claim 12 of the 0577 patent. Several issues are presented. Our issues concern the District Court's adoption, then seeming tightening, of a claim construction of language that requires a plurality of rods, a cable that the user can connect selectively to one or more of those rods. The net result of the District Court's construction was to require the user to be able to choose to connect an individual cable to any rod or any subset of rods among all the rods in the machine. We think that that went too far. Your opponent makes much of the addition of the word selectively during prosecution. What's your response to that? All selectively requires is choice, but the word itself doesn't define the complete open-ended range of choice that the District Court required. Selectively adds to one or more the requirement that the user be able to, in a single machine, choose to connect to one rod or to choose to connect to more than one rod. How can they connect to one rod? Because the device is already permanently attached to one rod, Rod 44. In two different ways, Your Honor. One is that that is a connection to a single rod, and the second has to do with... No, but you have to select. There's no way to select a single rod. How do you select a single rod? By selecting that rod and not selecting... You're not selecting anything. It's attached. You've done nothing. It's pre-selected. It's pre-selected, but you are selecting to include nothing else. In other words, you lay down on the machine and that's enough. That's selection. Well, that's one aspect. The other aspect has to do with the a-plurality language, which doesn't require that all the rods in the machine have the choice. That is, be available for choice. Plurality is one or more, isn't it? Yes. So you've got to be able to select one. How do you select one? I think in two different ways. You can select the one that is already attached by choosing not to attach anything else. The other way is to look at the plurality of rods in the ICON machine that excludes that rod. Except that the prosecution history tells us that you have to be able to select any rod, any single rod, any one rod. No, I think that's quite wrong. Selectively connected to any one or more rods. So how do you select any one rod when it's already connected to one? Your Honor, neither that statement, the any combination, nor the statement in the specification… Any combination. Right. Neither one of those is a description of a single cable embodiment. Notice that that language does not describe what any individual cable has to attach to. That language says in the prosecution history, our machine, and in the specification, our dual cable machine. And it says in those machines, a user has the choice of selecting any combination. Now it is absolutely plain that no individual cable can in fact connect to any of the rods in the machine. In the machine that is being described in the specification embodiment, it's a two cable machine. Same thing in the prosecution history. Each of those cables connects selectively to some subgroup of the rods. Not all of the rods. It can't happen. They go crosswise and bend into each other. It is as plain as can be that that is a description not of the invention, that language is not used, nor of what any individual cable can do. It is a description of a particular embodiment, and that's why it cannot control the language of the claim. If you give the language of the claim the meaning that ICON and the district court does, it plainly reads out the preferred embodiment. But Rod 44 is a rod, right? So it's got to be part of the plurality. No, no, no. I beg to differ, Your Honor. All that the claim language requires is that there be a plurality of rods that is subject to this selection requirement. It doesn't say that all the rods in the machine have to be subject to the selection requirement. So one can take the plurality of rods other than their Rod 44 and say, can the user choose among those? Well, there's a little ambiguity because the Rod 44 is the same. We've got the Rod 44. 44 is unfortunately the number that falls on the U-channel as well as the 44, the number in the patent. Let's stick with the 44 U-channel rod. Yes, that's what I'm trying to do. Okay, good. I understand. Even though we're now talking about claim construction, let's assume we're looking at the ICON machine, which I'm not sure we're entirely supposed to do, look at the accused product, but looking at that machine, take the set of rods other than the permanently fixed one. Is it true that under some meaning, under any meaning of selectively connect, that among those remaining rods, which is a plurality, that you can have user choice? Well, yes, of course you can. All of which I think simply shows that the natural meaning of selectively connect to one or more rods doesn't require the addition of the word any or each or every, which the district court added. The district court apparently recognized that if you add those words in, then you have this problem of reading out the preferred embodiment. And that's why the district court then injected this concept of adjacent rods to try to solve a problem that it created by over-reading the language of selectively connect. If you have a plurality that the user has to be able to take a cable and selectively connect that cable to one or more, that doesn't require any more than user choice of one rod or user choice of more than one rod. That can be done, in fact, in the Archon machine. I'm going to commit an appellate no-no, but I'm going to ask you a question other than what has been briefed. And that is, even if we get by this and we send it back, isn't it still going to be sent to us once again with the bounce-back, bounce-back effect? Because where's the structure in the specification? The structure in the specification that corresponds to our means claim here is a detachable link. There's no detachable link in a U-channel, is there? Oh, but there's an equivalent of a detachable link, which is always necessary under a 112.6. And let me mention two points. So that's our next appeal, right? And if you should, by some chance, win on that, we'll go down and we'll fight on another one, and there will be, what, 90, 100 appeals here, one word at a time, coming back and forth? Well, there are, I think, in this appeal now, several claim construction issues, all of which can and presumably should be resolved. I don't think there are other claim construction issues that remain alive, or my colleagues on the other side here would have raised them. Two quick points about the issues you raised. Even if we were wrong about our claim construction on Selectively One and More, we nevertheless are entitled to a trial on equivalence infringement. This Court has repeatedly said, including most recently in the LG Electronics case and the Primos case, that vitiation occurs, which is the sole basis for summary judgment of equivalence non-infringement here, only if no meaning is left to the claim. That plainly is not true, even under their claim. Is it agreed, setting aside this question of the link, is it agreed that on your claim construction there is no longer any dispute with respect to infringement, other than the nature of the link? No, I think that's not agreed at all. There remains the question of equivalence to the function, doctrinal equivalence infringement of selectively connecting. It's our position, and the district court granted summary judgment against us, saying that this position would vitiate the selectively connect language. Even assuming that selectively connect requires... I thought vitiation related to the nature of the link. No, no, no, no, your honor, that's not right. It relates to the equivalence of the function. The link has to do with the identification of the structure, and let me make one point about that. Their own claim construction, at page 530 of the appendix, recognized that the ordinary dictionary meaning of connect includes usually by some intervening, with some other intervening components. That tells you that the function of connecting does not mean connecting directly. It tells you that when there's an eyelet on the rod or a spring lock on the cable, those need not be part of the connecting because the very definition of connecting at 530 of the appendix that they promoted does not mean connecting directly. When you look just at the function of connecting, which includes these other intermediaries, then the structure that performs that is the detachable link, the carabiner-like structure. If I can, I guess I have a couple of more minutes. You can save more rebuttal time than you asked for, if you like. Let me mention, I guess, the one other issue which perhaps will be argued, the one end argument that my friends on the other side of the aisle here have presented. We think that one end, as this court already concluded in the last appeal, doesn't mean only one end. It means at least one end. But that is law of the case and, in any event, quite correct. In a variety of other patent claims, in this patent and its predecessor, the 704, the patentees, when they wanted to say that the other end had to be fixed, said so. This claim, 12, doesn't. And that leaves the ordinary meaning that the district court found. One end free means one end free, quite irrespective of what's happening on the other end. And finally, even if we were wrong about that, they're not entitled to summary judgment of infringement on that because we have a doctrinal equivalence argument that the way that they set up their horizontal bars, which is essentially to fix them in the middle, we have a doctrinal equivalence argument that that's the equivalent of two rods on each side, one each fixed in the middle and free at one end. I'm going to reserve the balance of my time. Thank you. Thank you, Mr. Taranto. Mr. Laramy. Thank you, Your Honor. Please, the court. We're here today to talk about the district court's interpretation of several claim terms. We believe that the district court's claim of instruction and its subsequent summary judgment order should be affirmed, particularly on the issue of means for connecting the cable selectively to one or more of the rods, and alternatively, on the one end of each of the rods being free. And last, there is this issue about the means for connecting and the corresponding structure. Let me turn first to the question of selectively. What does that mean? We have here a means plus function limitation, which requires a means for connecting the cable selectively to one or more of the rods. Now, if the limitation is read the way that Nautilus reads it, it reads selectively right out of the limitation. It creates surplusage. Because if you were to take selectively out,  that's exactly what they say the limitation means. But if it's one or more, you certainly have to make a selection. Isn't that all that selectively requires? No, Your Honor. Because this is a means plus function limitation, means for means capable of, structure capable of. And in that case, if you have structure capable of connecting to one or more rods, there is already choice present in that language. It's like if you said means for generating heads or tails. You would have to have something that was capable of generating either, that is, both of them. And means for connecting without selectively requires the choice both of connecting to one and connecting to more. It's only when selectively is added that additional choice is required. It's not how many, it's which one. That's why the district court, consonant with the specification, the abstract, in the prosecution history set, that it requires selective connection to any one or any group. Interestingly, But where does the specification show that you have to be capable of connecting to the rods on the opposite side? Well, Your Honor, that goes to whether this covers the preferred embodiment. I believe that's where the court is going with this. Yes, it does indeed. And as they say, the only embodiment. Your Honor, the claim, Claim 12, requires a flexible cable and it requires means for connecting selectively to one or more of the rods. Would you read the claim in light of the specification? I agree, Your Honor. And let me address the first question first, if I could. And that is, this claim construction reads perfectly on the preferred embodiment because you've got this bank of rods with a single cable. Clearly, that cable is associated with one set of rods. The other cable is associated with the other set of rods. And if you use that cable, you can connect to any one of those rods with which it is associated. That's the natural reading of the specification, which is consistent with the spec where it says at column 5, lines 37 and 38, that the cable can be connected to any combination. It's talking about the rods on that side. The fact that the commercial embodiment of this, and one of the embodiments shown in the specification, chose to satisfy that limitation with two sets of rods is not relevant. It clearly reads on that embodiment because that cable can be connected to any combination of rods and any one rod. But in the crossbow device, you can't do that because you can't select rod 44, the U-channel rod, because it's already selected. Part of selection, I suppose, is the ability not to select. You can't not select that one. And in fact, if you do as Nottle suggests, and you select one of these other rods to put under the U-channel, you have selected not any one, you've selected two. But I don't recall you making the argument that on their claim construction, there's no infringement, which I think is what you're telling us now. Well, I believe, Your Honor, that was exactly the argument we made below, that there was, that there, well, forgive me. We did not argue that there was no infringement on theirs on this issue. There are other issues on infringement. There are clearly other issues on infringement. We've got the business about what the means is and what the equivalence of that might be, and with the one-end issue. We don't believe that there's infringement anyway, but we believe that the district court's interpretation should be affirmed. Now, you might ask, why is it that the patentee would choose to use selectively and thus narrow their claim? The answer to that is clear in the prosecution history. Claim 21, which was of narrower scope than Claim 12, had this connection to the rods and the same sort of language, but it did not have selectively in it. That claim was rejected on our end. And so the patentee was required to amend that claim to add additional limitations. If the patentee had not put selectively in this claim, Claim 12... But it wasn't rejected on the selectively issue. Well, it was rejected on our, I think it was a 102A, B rejection, and until they added additional limitations, they could not get the claim allowed. And so what that says is that without selectively, Claim 12 would not have been allowed because it was of even broader scope than Claim 21. So clearly selectively played an important part in getting this claim allowed. In fact, in the prosecution history, when they talked about Claim 12, which was then Claim 32, they said, as Judge Rader pointed out a moment ago, that this particular configuration allowed connection to any one or more of the rods. Any is selecting which one, not how many, but which one. And the crossbow product can't do that. Now, the argument that was made in the briefs and today about the plurality issue, that you can select some other plurality, and among that plurality you can select any one or any group of rods. That, frankly, Your Honor, the first problem is that that is a brand new argument. That argument was not laid below. In the Sage Products case, this court held that this is an appellate court, and on page 1426 it said that this is an appellate court. By and large, it is our place to review judicial decisions, and that you cannot... Well, we're discussing claim construction, right, which is a question of law. So let's discuss the issues. If, in fact, they're new, we'll disregard them. That's fine, Your Honor. I'd be happy to do that. The question of the preferred embodiment, I think we've talked about, because we believe that it does, in fact, read on the preferred embodiment, as I've explained. Now, the question of what the structure is that corresponds to the means is another interesting question, because below, when Nautilus started arguing that this rod 44 was not a rod, it said that it wasn't a resilient rod, they sort of switched horses, and they said, well, now that rod is part of the means part of this claim. Well, the problem with that is that when the specification talks about the means part of this claim, it discloses three structures. It discloses a spring clip, it discloses an eye bolt or eye bolts, and it discloses an attachable link. There is nowhere that it comes anywhere close to saying that part of the means for connecting is a rod. But if they exclude rod 44, the U-channel rod, from the plurality, then it, according to them, becomes part of the means for connecting. Well, that clearly is not equivalent. There is no place that says anything about a rod being part of the means for connecting a rod. That's problematic for them. Now, going on to that subject for just a moment, the purpose of a means plus function claim, or the way that it's analyzed, is to say that you look at what's disclosed in the specification as corresponding structure. The district court recognized, and it's very clear in the patent, that what is disclosed as corresponding to the means here is the eye bolts, the detachable links, and the spring clips. That's at the Joint Appendix 149, column 3, lines 55 to 58. The district court clearly erred in saying that it's only the detachable link, because what is expressly disclosed as corresponding are those three structures. And he eliminated two of them, and that's incorrect. And we believe that if the court doesn't affirm on the other issues of point construction, that should be remanded for reconsideration of that issue. I'd like to move, if I could for a moment, with one end of each of the rods being free limitation. The big problem with this is surplusage. Surplusage really goes to all of the major issues in this appeal. This court and the district court construed in cantilever fashion the phrase that proceeds with one end of each of the rods being free as covering both single and double cantilevers, that is, with one end or both ends being free. Now, the district court construed with one end of each of the rods being free to also mean with one end or both ends free. If you stack those two next to each other, it's clear to see that they mean the same thing. Under this court's analysis in the appeal from the preliminary injunction, surplusage of that type is unacceptable because it reads out of the claim a limitation. It gives it no meaning. Therefore, we believe that on that basis as well, it's an alternative ground for affirmance of the district court's ruling because clearly, if with one end of each of the rods being free means what its plain meaning suggests and what surplusage suggested means, we don't have it because everybody agrees that we have two ends free, not one. There are some other reasons why that's true. In the Claim 14 of the patent, which depends from Claim 12, it talks about hook means, which is part of the subset of the means for connecting. That hook means is required to connect to the free end of each of the rods. It says the free end. The is generally singular. End is clearly singular. It's talking about one end of the rods, not two ends of the rods. If you read the independent and the dependent claims together, it suggests that we're talking about a single free end, not two. The other problem is that if you read one end of each of the rods to mean one or more, it creates inconsistency in the use of the term one end. One is used throughout the claims in different ways. When it says one end, it means a single end. When it says one or more, it means one or more. The patentee clearly knew how to say one or more when that's what he was referring to. Here he did not. He said one. But you just look at the specification to see what he means. Well, and if you look at the specification, what you would determine is that they only have one end free, not two. But you have the problem of our prior decision. Well, Your Honor, with respect to the prior decision, that decision, I think it's undisputed, was rendered in connection with the appeal of the preliminary injunction. In the Oakley case, the CBI-Beta case, and the Glaxo case, it's clear that a preliminary decision is not binding later on in the case. Yes, we agree. But nonetheless, it's the law of the case, unless you point out where it was incorrect. I think, in fact, we have pointed out where it was incorrect, Your Honor, because this court relied heavily on the doctrine of surplusage. The one end part of this court's November 18, 2003 decision was really, it was a small part of the decision, but more importantly, it was not briefed. The only issue on appeal in that case was in cantilevered fashion. That's in the notice of appeal, it's in the statement of issues on appeal, and it's in the colloquy between the court and Mr. Michael Jones. And so when this court issued its ruling and talked about that limitation, ICON filed a petition for rehearing, and it was denied. And in the end, we asked for an order in the mandate saying that the district court could consider new issues, excuse me, new argument and evidence. And part of that was this one-end business. And this court, in the face of strident objections by notables, ordered the district court to consider new argument and evidence. And that's what this is all about, this one end of each of the rods being free. I'd like to raise one last issue, if I could, Your Honor, and that's on this business of vitiation. Going back to the means for connecting, if I could, for just a moment. Vitiation occurs when a reading that would give you infringement of the doctrine of equivalence effectively reads out a limitation from the claim. Nautilus, both below and above, when they make their argument against vitiation, simply tried to re-argue claim construction. They said, look, what we're really talking about here is choice between one rod and more than one rod. That's just a retreat to where they are on claim construction. They're reading out selectively from the claims. That's all I have. Thank you for your time. Okay. Thank you, Mr. Lorimer. Mr. Taranto? Thank you, Your Honor. If I can try one analogy on the selectively point that Judge Rader, you raised at the beginning. It seems to me that when, on your computer menu screens, Microsoft gives you various choices and the screen comes up with a default box already there, that when you select the default, you are still selecting it. That, I think, is a perfectly natural use of selecting a rod, a single rod, that's already connected with the accused device. Vitiation. This Court has now repeatedly made clear that vitiation, a legal ground, is separate in part from the question of factual equivalence. Vitiation occurs only if, by reaching the accused product under the doctrine of equivalence, you would effectively reach so wide a range of devices that there is no meaning left. That is plainly not true when you have a very wide range of choice that even under an equivalence theory, but their construction would remain. There can't be vitiation here if there wasn't in LG, in Primos, and in other cases. The structure, the connecting means. The only question that is ruled on below, and that Icon presents here, is the claim construction question, not the question of equivalence to whatever that identified structure is. That question, the equivalence question, is for later in the proceeding. There was no summary judgment motion made on that. The only question is the claim construction question. What is the structure that is the means for connecting? And again, connecting doesn't mean connecting directly. It just means connecting these things under their definition, usually by some intervening structure. The eyelets and the spring clips are such intervening structures. And finally, the prosecution history. Claim 21, you can see this described in page 9 and 10 of our reply brief. The original claim 21 that was added, the one that was added in the 704, the predecessor prosecution, was amended and got approved without adding the word selectively. Selectively was not a requirement to overcome the prior art. Selectively was introduced in the successor prosecution, the continuation application, with an explanation that did not in any way distinguish saying we want more selection than choosing the different various numbers of rods to require what Icon and the district court requires, which is that there would have to be some difference between choosing rod 1 and choosing rod 2 and choosing rod 3, even though they're all exactly the same, give the same resistance, and even though the claim itself says what the purpose of the selection is, which is to vary the resistance and expressly says in the final clause of claim 12 that that depends what on the number of rods, not on which of two or three identical rods is chosen. Thank you, Your Honor. Thank you, Mr. Taranto. Thank you, Mr. Larimer. The case is taken into submission.